UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES,

       -against-              <u>MEMORANDUM & ORDER</u>
                                  10-CR-0622 (JS)
STEPHANIE LLOYD,

              Defendant.
-------------------------------X
APPEARANCES:

For Government:     Lara Treinis Gatz, Esq.
                  Charles N. Rose, Esq.
                  United States Attorney's Office
                  Eastern District of New York
                  610 Federal Plaza
                  Central Islip, New York 11722

For Defendant:     Jan Alison Rostal, Esq.
                  Federal Defenders of New York, Inc.
                  One Pierrepont Plaza, 16th Floor
                  Brooklyn, New York 11201

SEYBERT, District Judge:

        Defendant Stephanie Lloyd ("Defendant") was convicted, after a jury trial, of: conspiracy to rob the Wyandanch Post office (the "Post Office"), where she had been employed, <u>see</u> 18 U.S.C. § 371 ("Count One"); robbery of the Post Office, <u>see</u> <u>id.</u> §§ 2114 and 2 ("Count Two"); and possession of a firearm during a crime of violence, <u>see</u> <u>id.</u> § 924(c) ("Count Three"). Judge Arthur D. Spatt[1] sentenced Defendant in November 2014 to time served as to Counts One and Two, and to sixty (60) months' imprisonment as to Count Three, as well as supervised release. Defendant has since

---

[1] This matter was reassigned to the undersigned on June 26, 2020.

concluded her term of incarceration and she is presently on supervised release.

Before the Court are two motions by Defendant pursuant to 28 U.S.C. § 2255 to vacate her Count Three conviction. (See Mot. to Vacate, D.E. 447; 2d Mot. to Vacate, D.E. 449.) Also before the Court, is a subsequently filed letter motion seeking a stay pending the resolution in the Second Circuit of United States v. Barrett, 937 F.3d 126, 127 (2d Cir. 2019), a case that has since been resolved. (See Ltr. Mot., D.E. 539.) In her § 2255 motions, Defendant argues that the Court should vacate her Count Three conviction because: (1) her convictions under Counts One and Two--the conspiracy and the substantive robbery--do not qualify as predicate "crimes of violence" for her § 924(c) conviction under Count Three; and (2) the Court improperly instructed the jury on Count Two, in that it gave an aiding and abetting instruction that could not have resulted in a conviction, because although she helped plan the robbery, she did not participate, and the robbers did not tell her when the robbery would occur. She relies on Johnson v. United States, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), and Rosemond v. United States, 572 U.S. 65, 134 S. Ct. 1420, 188 L. Ed. 2d 248 (2014).

The Government contends that these claims lack merit because both predicate crimes are crimes of violence under § 924(c), and the Court properly instructed the jury on alternative

2

theories of liability based on aiding and abetting and on Pinkerton v. United States, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946), the latter of which permitted convicting Defendant even without her participating in the robbery itself.  Defendant has since argued that the recent Supreme Court holding in United States v. Davis, 139 S. Ct. 2319, 204 L. Ed. 2d 757 (2019) also undermines her Count Three conviction.

For the following reasons, the Court denies Defendant's motions, declines to issue a certificate of appealability, and closes the case.  Although the Supreme Court in Davis invalidated § 924(c)'s residual clause, and Defendant establishes constitutional error in that the Court may have relied on the residual clause in sentencing her, she fails to show prejudice, because one of those predicate felonies, post office robbery, is a crime of violence under § 924(c)(3)(A)'s elements clause.  In addition, Rosemond had been decided at the time of Defendant's sentencing, and her failure to invoke it on her direct appeal means that she has procedurally defaulted on the claim.  She offers no excuse for this default.  In any event, the Court properly instructed the jury on a Pinkerton theory, and a conviction under Pinkerton does not convert her conviction under Count Two into one under the residual clause.

BACKGROUND

I.   The Indictment and Trial

        The Court assumes familiarity with the background of this case.  However, by way of a review, on December 9, 2010, Defendant was charged, along with her co-conspirators Sharod Williams ("Williams") and Travis Walker ("Walker"), with Hobbs Act Conspiracy to Commit Robbery, Robbery, and Brandishing of a Firearm During a Crime of Violence, in connection with the robbery of the Post Office.  United States v. Lloyd, 947 F. Supp. 2d 259, 262 (E.D.N.Y. 2013).  Defendant was later charged in May 2012, by Superseding Indictment, along with coconspirator Laurell Lewis, with the above-noted Counts One, Two, and Three.  (Superseding Indictment, D.E. 198.)

        The criminal proceedings came before Judge Spatt, who conducted separate trials for the various defendants.  At Defendant's trial, the Court heard testimony from, inter alia, Defendant, Walker, and a postal inspector.  Evidence adduced at the trial established that Defendant worked at the Post Office.  (Tr. 626:8-12.)[2]  She had told Walker, with whom she had shared a periodic romantic relationship (Tr. 625:5-13; 630:1-9; 732:21-

---

[2] Transcripts ("Tr.") can be found as follows:  May 9, 2012 pp. 173-381, D.E. 426; May 10 pp. 384-722, D.E. 427; May 14 pp. 614-770, D.E. 428; May 15 pp. 771-1053, D.E. 429; May 16 pp. 1054-1239, D.E. 430; May 17 pp. 1240-1403, D.E. 431; May 18 pp. 1404-1425, D.E. 432.  Sentencing Transcript ("Sent'g Tr."), DE. 405.

7:33:22), that she wished for someone to rob the Post Office with her present so that she could collect workers compensation (Tr. 638:7-639:7).

Over several months, Defendant and Walker spoke about the robbery, with Defendant answering any questions Walker had about planning the robbery. (Tr. 640:8-645:20; 771; 917.) The robbery ultimately occurred in October 2009, on a day when Defendant was not at the Post Office, preventing her from collecting workers compensation. (Tr. 673:1-12.) Lloyd had insisted that the robbery take place around Christmas, when there would be more money in the Post Office's safe, and she had not been told that the robbery would be done months earlier. (Tr. 647:4-9; 722:3-723:23; 758:3-759:7.)

II. Jury Instructions and Verdict

The Court provided the following instructions to the jury as to Count Two. First, the Court instructed that "[c]ount 2 charges [D]efendant with aiding and abetting the robbery of the United States Postal Service on or about October 30th, 2009." (Tr. 1364"1-4.) Second, the Court read aloud the portion of the Superseding Indictment that had charged Defendant with Count Two, and then read aloud the underlying statute, 18 U.S.C. § 2114(a). (Tr. 1376:10-1378:4.) Third, the Court said that the jury needed to find that the Government had proven the following elements beyond a reasonable doubt:

5

[f]irst, that the defendant, Stephanie Lloyd, aided and abetted in the robbery of the Wyandanch post office; Second, that the, quote, robbery of the Wyandanch post office was by force, violence or intimidation; Third, that the robbery was carried out by the use of a dangerous weapon, putting in jeopardy the life of the person or persons having control of the money; and Fourth, that the perpetrators of the robbery acted knowingly and intentionally.

(Tr. 1377:19-1378:4.)  Fourth, the Court explained to the jury the elements of the substantive crime of robbery and on the law of aiding and abetting.  (Tr. 1378:10-1382:13.)  Fifth, the Court instructed the jury on a Pinkerton theory of liability as to Counts Two and Three.  (Tr. 1386:24-1389:16.)

On May 18, 2012, the jury returned a verdict finding Defendant guilty on all three counts listed in the Superseding Indictment. (Verdict Sheet, D.E. 224-5.)

III. Post-Verdict Motions, Sentencing, and Defendant's Direct Appeal

Following her conviction, Defendant moved for a judgment of acquittal and for a new trial under Federal Rules of Criminal Procedure 29 and 33. (2012 Mot., D.E. 251.)  The Court denied those motions in May 2013. United States v. Lloyd, 947 F. Supp. 2d 259, 269 (E.D.N.Y. 2013).  In denying those motions, the Court held, inter alia, that the jury rationally held Defendant criminally liable for Counts Two and Three under a Pinkerton theory.  Id. at 266.

The case proceeded to sentencing.  On November 13, 2014, the Court sentenced Defendant to time served on Counts One and Two, and 60 months' imprisonment on Count Three, with three years' supervised release.  (J., D.E. 393; Sent'g Tr. 405.)

Defendant filed a notice of appeal.  (2014 Appeal, D.E. 395.)  On appeal, Defendant challenged both her conviction and the Court's denial of her post-judgment motions.  On December 17, 2015, the Second Circuit issued a mandate that affirmed Defendant's conviction and sentence and dismissed her appeal.  United States v. Lloyd, 631 F. App'x 45, 50 (2d Cir. 2015) (summary order).  Defendant did not petition the United States Supreme Court for a writ of certiorari.

IV.  Post-Conviction Proceedings

On June 24, 2016, Defendant, through counsel, moved to vacate her conviction under § 2255.  (See Mot. to Vacate.)  She raised a single claim, that her convictions under Counts One and Two did not qualify as § 924(c) crime of violence, under either the elements clause or the residual clause, thus undermining her Count Three conviction.  (Id. at 4.)  Defendant cited Johnson in support of this claim.  (Id.)

While that motion was pending, Defendant filed a pro se § 2255 motion.  (See, 2d Mot. to Vacate.)  Defendant alleged that her conviction violated her rights under the Fifth, Sixth, and Fourteenth Amendments.  (Id. at 2.)  Defendant also asserted that

the Court erred in its jury instructions as to Count Two, because, pursuant to Rosemond, she "can not bear responsibility for a robbery she had no knowledge of." (Id. at 3.)  She elaborated in contending that while she helped to plan the robbery, that her co-conspirators did not inform her about the change in the date of the post office robbery, or about who would be participating in the robbery. (Id. at 3–4.)  Accordingly, she argued, she did not have a guilty mind regarding the robbery. (Id. at 4.)  Defendant also reiterated her Johnson claim from the previously filed § 2255 motion. (Id. at 4–6.)

In August 2017, the Court issued an order to show cause directing the Government to respond to Defendant's motions. (Aug. 2017 Order, D.E. 489.)  The Government opposed the § 2255 motions on August 30, 2017. (Gov't Opp., D.E. 490.)  Defendant did not file a reply.

In January 2018, Defendant asked for a stay of proceedings, pending the resolution of Lynch v. Dimaya (later called Sessions v. Dimaya). (Jan. 2018 Ltr., D.E. 515.)  The Court granted that motion. (Jan. 30, 2018 Electr. Order.)  The Court later granted Defendant's motion for a stay pending the outcome of the Second Circuit's decisions in United States v. Hill and United States v. Barrett. (See, Apr. 2018 Mot., D.E. 522; Sept. 2018 Order, D.E. 536.)  In September 2018, Defendant asked for an extension of the stay, pending the Second Circuit's final

8

resolution of <u>Barrett</u>.  (Ltr. Mot., D.E. 539.)  That case has since been resolved.  That motion, and Defendant's two § 2255 motions, are currently before the Court.

<u>DISCUSSION</u>

The Court now rules on the pending motions.  For following reasons, the Court denies Defendant's § 2255 motions, and denies as moot Defendant's request for an extension of the stay pursuant to <u>Barrett</u>. The Court also denies Defendant a certificate of appealability and closes the case.

I.   <u>The § 2255 Standand</u>

Section 2255(a) provides as follows:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a).  To obtain relief under § 2255, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  <u>Cuoco v. United States</u>, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citations omitted).  In addition to showing a constitutional error, the

movant must also show that the error had "substantial and injurious effect" that caused the movant "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed. 2d 353 (1993) (internal quotation marks and citations omitted); Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999) (applying Brecht to a § 2255 motion).

    The Supreme Court has held that to "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152-53, 166, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982). The discretion to grant relief under § 2255 is to be exercised sparingly, for such applications "are in tension with society's strong interest in the finality of criminal convictions." Elize v. United States, No. 02-CV-1530, 2008 WL 4425286, a *5 (E.D.N.Y. Sept. 30, 2008) (internal quotation marks and citation omitted); see also Brecht, 507 U.S. at 633–34, 113 S. Ct. at 1719.

## II.  Application to the Facts of the Johnson/Davis Claim

    In her § 2255 motions, Defendant contends that her predicate crimes, the 18 U.S.C. § 371 conspiracy to rob a post office, and 18 U.S.C. § 2114 post office robbery, do not count as crimes of violence, pursuant to Johnson. (Mot. to Vacate, D.E. 447 at 5; 2d Mot. to Vacate, D.E. 449 at 5–6.) In opposition, the Government contends that both of Defendant's predicate crimes

constitute crimes of violence under the § 924(c)(3)(B) residual clause. (Gov't Opp. at 4.)

Defendant, through counsel, also filed a supplemental memorandum in support of her § 2255 motions. (Pet'r Suppl. Mem., Dec. 568.) Defendant informs the Court that her term of imprisonment has ended and that she is currently on supervised release. (Id. at 1.) Defendant also argues that the Court must vacate her conviction because the Supreme Court in Davis recently ruled that the § 924(c)(3)(B) residual clause was unconstitutionally vague. (Id.) She asks the Court to vacate her conviction as to Count Three, and impose a sentence of time served on Counts One and Two along with three years' supervised release. (Id. at 2.)

A.  As to the "In Custody" Requirement of § 2255

As an initial matter, Defendant remains "in custody" for purposes of bringing a § 2255 motion. A district court may not entertain a collateral attack on a sentence imposed by a federal court unless the petitioner satisfies the jurisdictional requirement of 28 U.S.C. § 2255. Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994). To meet this threshold, the petitioner must be in custody pursuant to the challenged sentence at the time she petitions for collateral review. Id.; Abimobola v. United States, 369 F. Supp 2d 249, 252 (E.D.N.Y. 2005).

A petitioner need not be in physical confinement to satisfy the "in custody" requirement. Id. (citing Scanio, 37 F.3d at 860). Thus, a petitioner on supervised release satisfies the "in custody" requirement. Id.

Here, Defendant was incarcerated at the time she filed her § 2255 motions. (See Mot. to Vacate at 1.) Thus, she satisfies the "in custody" requirement of § 2255.

B. Legal History of § 924(c) and Vagueness Challenge

The Supreme Court's holding in Johnson pertained to the Armed Career Criminal Act, which created a sentencing enhancement when a violator had three or more convictions for a "serious drug offense" or a "violent felony." Johnson, 135 S. Ct. at 2555 (citing 18 U.S.C. § 924(e)(1)). That statute's definition of "violent felony" contained a "residual clause" that Johnson held violated due process. (Id. at 2557.)

Following Johnson, litigants sought to apply its holding to other statutes including, as relevant here, § 924(c). A defendant violates § 924(c) if she used or carried a firearm during and in relation to, or possessed a firearm in furtherance of, a "crime of violence" or "drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3) "proceeds to define the term 'crime of violence' in two subparts": subsection (c)(3)(A) is the elements, or force clause (hereinafter the "elements clause"), and subsection (c)(3)(B) is the residual, or risk-of-force clause

(hereinafter the "residual clause").  Davis, 139 S. Ct. at 2324.

Those clauses provide that a crime of violence is a felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

In Davis, the Supreme Court invalidated as unconstitutionally vague the residual clause in § 924(c)(3)(B), in light of the Supreme Court's holdings in Sessions v. Dimaya, 138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018), and Johnson, 139 S. Ct. at 2336.  As a result of Davis, a § 924(c) conviction survives only if a predicate offense was a "crime of violence" under the elements clause.  See, e.g., Rosario Figueroa v. United States, No. 16-CV-4469, 2020 WL 2192536, at *2 (S.D.N.Y. May 6, 2020); Vilar v. United States, No. 16-CV-5283, 2020 WL 85505, at *1 (S.D.N.Y. Jan. 3, 2020).

Courts must apply a categorical approach to determine whether an offense is a crime of violence under the elements clause.  United States v. Hill, 890 F.3d 51, 55 (2d Cir. 2018) (citing Taylor v. United States, 495 U.S. 575, 600, 110 S. Ct. 2143, 2159, 109 L. Ed. 2d 607 (1990)); see United States v. Acosta, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam).  Under the categorical approach, an offense is a crime of violence where the

"minimum conduct necessary for a conviction of the predicate offense" involves violence.  See Hill, 890 F.3d at 55-56; United States v. Culbert, No. 19-CR-0613, 2020 WL 1849692, at *1 (E.D.N.Y. Apr. 13, 2020).  To determine this, a court must "look only to the statutory definitions--i.e., the elements--of the offense," to resolve whether commission of the crime requires violence.  See Hill, 890 F.3d at 55-56 (internal quotation marks and brackets omitted).

The categorical approach saves courts from determining on a case-by-case basis how violent the ultimate conduct was, or from making a more general inquiry into "the kind of conduct that the crime involves in the ordinary case."  Davis, 139 S. Ct. at 2326 (citing Dimaya, 138 S. Ct. at 1216).  A predicate crime will not support a conviction under the § 924(c) elements clause if there is a "a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not" involve violence.  Hill, 890 F.3d at 56 (internal quotation marks and citation omitted).  In 2019, the Second Circuit applied the categorical approach to conspiracy to commit Hobbs Act Robbery, ruling that "Davis precludes us from concluding . . . that Barrett's Hobbs Act robbery conspiracy crime qualifies as a § 924(c) crime of violence."  Barrett, 937 F.3d at 127.

C.  <u>As to Whether Defendant's Predicate Offenses are Crimes of Violence</u>

In this case, the record does not expressly state whether the Court relied on ether § 924(c)'s elements clause or residual clause regarding her § 924(c) conviction.  (<u>See</u> Sent'g Tr.)  While the parties do not brief this issue, the Court notes that the Second Circuit has yet to resolve whether a habeas petitioner must show that the trial court relied on the residual clause when imposing a § 924(c) sentence.  <u>See</u> <u>Acosta v. United States</u>, No. 03-CR-0011, 2019 WL 4140943, at *7, n.7 (W.D.N.Y. Sept. 2, 2019) ("The Second Circuit has not addressed the petitioner's burden in showing reliance when it is unclear from the sentencing record whether he was sentenced under the residual clause or force/elements clause.").  Multiple courts in this Circuit have concluded however, that "'a petitioner can meet his burden of proving constitutional error [under <u>Johnson</u>] by demonstrating that his sentence <u>may have been</u> based on the residual clause.'" <u>See</u> <u>Memoli v. United States</u>, No. 04-CR-0140, 2017 WL 3559190, at *11 (S.D.N.Y. July 11, 2017) (emphasis in original), <u>adopted</u> <u>by</u> <u>United States v. Memoli</u>, 2017 WL 3504918 (S.D.N.Y. Aug. 15, 2017) (quoting <u>Thrower v. United States</u>, 234 F. Supp. 3d 372, 378 (E.D.N.Y. 2017), <u>rev'd on other grounds</u>, 914 F.3d 770 (2d Cir. 2019), <u>cert.</u> <u>denied</u>, 140 S. Ct. 305, 205 L. Ed. 2d 200 (2019)); <u>Diaz v. United States</u>, No. 16-CV-0323, 2016 WL 4524785, at *5 (W.D.N.Y. Aug. 30, 2016)

15

(ruling on Johnson claim that "where . . . it is unclear upon what portion of the 'violent felony' definition the sentencing court relied, a defendant has 'successfully demonstrated constitutional error simply by showing that the court might have relied on an unconstitutional alternative when it found [his] prior convictions for robbery . . . were violent felonies.'") (quoting United States v. Ladwig, 192 F. Supp. 3d 1153, 1159 (E.D. Wash. 2016)).

The aforementioned cases involved § 2255 motions filed under Johnson. In 2019, a court in the Western District of New York applied the same reasoning to Davis. See Acosta, 2019 WL 4140943, at *7 ("In light of the foregoing factors, the Court finds that [petitioner] has shown that the sentencing court might have relied upon the residual clause in finding that his § 242 convictions qualified as crimes of violence.") (emphasis in original). More recently, the Court adopted this reasoning in a § 2255 motion filed by one of Defendant's co-conspirators. See United States v. Lewis, No. 10-CR-0622, 2020 WL 2797519, at *7 (E.D.N.Y. May 22, 2020).

Some Circuits have imposed tests mirroring this standard. See United States v. Geozos, 870 F.3d 890, 896 (9th Cir. 2017); United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017); United States v. Taylor, 873 F.3d 476, 480-82 (5th Cir. 2017). Other Circuits, the First, Tenth, and Eleventh, require petitioners to prove by a preponderance of the evidence that the

16

court relied on an unconstitutional ground for sentencing.  See
Dimott v. United States, 881 F.3d 232, 243 (1st Cir. 2018); United
States v. Snyder, 871 F.3d 1122, 1128-30 (10th Cir. 2017); Beeman
v. United States, 871 F.3d 1215, 1221-22 (11th Cir. 2017).

Based on the above noted rulings, the Court will not
deny Defendant's § 2255 motion based on a failure to show reliance
on the residual clause.  To require Defendant to prove by a
preponderance of the evidence that the Court relied on a particular
§ 924 clause would lead to arbitrary results based on the
specificity used by judges during sentencing.  See Thrower, 234 F.
Supp. 3d at 378 ("Adopting the government's position regarding
Thrower's burden of proof would mean that Thrower's petition would
fail simply because [the judge] did not, during the sentencing
proceeding, specify on which ACCA clauses I [the judge] was
relying.").  The Court further notes that in cases such as this,
where Defendant received her sentence before Johnson and its
progeny, applying the Government's proposed rule would be to
require § 2255 movants to hope that the judge sentenced them
according to a standard that did not yet exist.  See id. ("This
was simply not an issue at the time, when neither I [the judge]
nor the parties could have predicted that one of the clauses would
be found unconstitutional seven years later.").  Accordingly, the
Court holds that Defendant has shown constitutional error.

Despite making this showing as to constitutional error, Defendant fails to show prejudice.  As explained below, although the Court rules that conspiracy to commit post office robbery is not a violent crime, post office robbery constitutes a violent crime under the elements clause.  This predicate offense is sufficient for the § 924(c) conviction.

As to conspiracy to commit post office robbery, the Second Circuit has not ruled on whether the offense constitutes a crime of violence.  In the previously mentioned case with one of Defendant's co-conspirators, those parties agreed that under Davis, conspiracy to commit post office robbery was not a violent crime.  See Lewis, 2020 WL 2797519, at *7 ("[The parties] agree, and the Court does not dispute, that if the conviction were based solely on [conspiracy to commit post office robbery], it would no longer stand, pursuant to Davis.").

Like the Second Circuit in Barrett, the Fourth Circuit has recently applied the categorical approach to conspiracy to commit Hobbs Act robbery and ruled that agreement with another to commit an action that would violate the Hobbs Act "does not invariably require the actual, attempted, or threatened use of physical force."  United States v. Simms, 914 F.3d 229, 234 (4th Cir. 2019).  Relying on Simms, the Eastern District of Virginia held that conspiracy to commit post office robbery is not a crime of violence, "because a defendant may be convicted of § 371

conspiracy even if the government does not prove any actual, attempted, or threatened use of force." McDuffie v. United States, No. 16-CV-0775, 2019 WL 3949303, at *3 (E.D. Va. Aug. 21, 2019).

The Court agrees with the reasoning in Barrett, Simms, and McDuffie.  Section 371 provides that:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of such conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371.  The text of the statute demonstrates that the minimum conduct necessary for a conviction does not implicate the use, attempted use, or threatened use of force when a person performs "any act" to effect the object of a conspiracy.  Thus, a conviction for post office robbery would necessarily rely on the § 924(c) residual clause, making it unconstitutionally vague pursuant to Davis, and further eliminating it as a predicate for a § 924(c) conviction for brandishing a firearm during a crime of violence.

The Court undertakes a more in-depth analysis in determining that post office robbery itself is a crime of violence, as it did Lewis, cited supra.  Section 2114(a) provides as follows:

> (a) Assault.  A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with the intent to rob, steal, or purloin such mail matter, money, or other property of the United States,

> or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

18 U.S.C. § 2114(a).

When a statute is "divisible," meaning that it defines multiple offenses, United States v. Jones, 878 F.3d 10, 16 (2d Cir. 2017) (citing Mathis v. United States, 136 S. Ct. 2243, 2252, 195 L. Ed. 2d 604 (2016)), courts apply a "modified categorical approach," which "permits consideration of certain materials that reveal which of a statute's separate offenses served as the basis for the defendant's conviction," Harbin v. Sessions, 860 F.3d 58, 64 (2d Cir. 2017) (citing Descamps v. United States, 570 U.S. 254, 257, 133 S. Ct. 2276, 2281, 186 L. Ed. 2d 438 (2013)). This "limited class" of materials includes the underlying indictment and the trial court's jury instructions. Descamps, 570 U.S. at 257, 133 S. Ct. at 2281.

Section 2114(a) is divisible in that it defines two offenses: (1) assault and robbery of government property, punishable by a term of not more than ten years' imprisonment, and (2) assault and robbery of government property where the victim is wounded or his life is put in jeopardy by the use of a dangerous weapon, punishable by a term of not more than twenty-five years'

imprisonment. 18 U.S.C. § 2114(a); see Moody v. United States, No. 16-CV-00472, 2020 WL 529281, at *5 (W.D.N.Y. Feb. 3, 2020).

While the Second Circuit has not ruled on whether § 2114(a) post office robbery is a crime of violence, other Circuits have ruled that the second offense listed in the statute, where a defendant wounds a victim or puts the victim's life in jeopardy, does constitute a violent crime under § 924(c)'s elements clause. See Knight v. United States, 936 F.3d 495, 500–01 (6th Cir. 2019); United States v. Enoch, 865 F.3d 575, 582 (7th Cir. 2017); In re Watt, 829 F.3d 1287, 1290 (11th Cir. 2016). These Circuits ruled that the "use of a dangerous weapon to put the victim's life in jeopardy transforms" whatever force that could be used in an assault and robbery "into violent physical force." Knight, 936 F.3d at 500. In Watt, the Eleventh Circuit held that a defendant who enters a post office, instructs a postmaster, at gunpoint, to fill a bag with money, forces her to the ground and then threatens to shoot her if she moves, indisputably commits a crime of violence under § 924(c)(3)(A). See Watt, 829 F.3d at 1289–90; see also Enoch, 865 F.3d at 582 (explaining that when "a defendant . . . brandish[es] a gun . . . as to put the life of a victim in jeopardy," he commits "an offense that 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another'") (quoting USC § 924(c)(3)(A)).

A court in this District also recently held that this second part of § 2114(a) constitutes a crime of violence. McCullough v. United States, No. 14-CV-1920, 2020 WL 869118, at *4 (E.D.N.Y. Feb. 21, 2020). In that case, the petitioner was convicted of putting persons' live in jeopardy by use of a dangerous weapon while robbing the post office. Id. As a result, the court denied the petitioner's § 2255 challenge to his conviction under § 924(c). Id.; see also Moody, 2020 WL 529281, at *8; James v. United States, No 16-CV-0477, 2020 WL 95655, at *6 (W.D.N.Y. Jan. 8, 2020). This Court agreed with this reasoning in denying the § 2255 motion filed by Defendant's co-conspirator Lewis. See Lewis, 2020 WL 2797519, at *11.

Here, the Superseding Indictment provides the following as to Count Two, the charge of § 2114(a) post office robbery:

> On or about October 30, 2009, within the Eastern District of New York, the defendants STEPHANIE LLOYD and LAURELL LEWIS, also known as "TK," together with others, did knowingly and intentionally rob and assault with intent to rob one or more persons having lawful charge, control and custody of money and other property of the United States, to wit: money and mail matter belonging to the United States Postal Service, of which money and other property, and in effecting and attempting to effect such robbery did put such persons' lives in jeopardy by the use of a dangerous weapon.

(Superseding Indictment at 2.) With respect to Count Two, the Court instructed the jury that Defendant was charged with aiding and abetting a post office robbery and then read aloud the above-

noted portion of the superseding indictment.   (Tr. 1376:10-1378:4.)

Accordingly, the Court holds that the second part of § 2114(a) served as one of the predicate felonies for Defendant's § 924(c) conviction.   The Court further DENIES Defendant's § 2255 motion as to this claim, because that predicate felony constitutes a crime of violence under the elements clause, and therefore, she fails to show constitutional prejudice on his § 924 conviction. See Brecht, 507 U.S. at 637, 113 S. Ct. at 1722; McCollough, 2020 WL 869118, at *4.

III. As to the *Rosemond* Claim

Defendant also contends that her convictions cannot stand under Rosemond because, although she helped plan the post office robbery, her co-conspirators did not keep her informed of the robbery's details and, accordingly, she cannot be held guilty for "a robbery she had no knowledge of."   (2d Mot. to Vacate at 3.)   The Government asserts that the Court properly instructed the jury on a Pinkerton theory of liability.   (Gov't Opp. at 5-6.) Defendant's supplemental memorandum does not address the Rosemond issue.

In Rosemond, the Supreme Court ruled that in order to find a defendant guilty of aiding and abetting a crime of violence or drug trafficking under § 924(c), the Government must prove "that the defendant actively participated in the underlying drug

trafficking or violent crime with advance knowledge that a [co-conspirator] would use or carry a gun during a crime's conviction." Rosemond, 572 U.S. at 67, 134 S. Ct. at 1243.  The Supreme Court further ruled that a "defendant's knowledge of a firearm must be advance knowledge--or otherwise said, knowledge that enables [Defendant] to make the relevant legal (and indeed, moral) choice." Id. 572 U.S at 78, 134 S. Ct. at 1249.

In reaching this conclusion, the Supreme Court reasoned that:

> When an accomplice knows beforehand of a [co-conspirator]'s design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an armed offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime.  And when that is so, Defendant has not shown the requisite intent to assist a crime involving a gun.

Id.  Thus, "an unarmed accomplice cannot aid and abet a § 924(c) violation unless he has foreknowledge that his [coconspirator] will commit the offense with a firearm."  Id. (internal quotation marks omitted).

The Second Circuit has not ruled on whether Rosemond applies retroactively to cases on collateral review.  See Marcano v. United States, No. 11-CV-5551, 2015 WL 1276759, at *10 (E.D.N.Y. Mar. 19, 2015); Minaya v. United States, 41 F. Supp. 3d 343, 345 (S.D.N.Y. 2014) (determining that Rosemond is not retroactive).

Other Circuits are split on the matter. See Velez v. United States, No. 17-CV-5369, 2017 WL 10402847, at *2 (6th Cir. 2017) ("The Supreme Court has not made Rosemond retroactive on collateral review."); Porter v. Fox, 701 F. App'x 335, 337 (5th Cir. 2017) (per curiam) (declining to reach retroactivity issue); Montana v. Cross, 829 F.3d 775, 783 (7th Cir. 2016) ("The parties correctly agree that Rosemond's holding is retroactive.").

The Court need not rule on whether Rosemond applies retroactively because it may deny Defendant's claim on two grounds. See Marcano, 2015 WL 1276759, at *10 (declining to address Rosemond's retroactivity and finding no jury instruction error). First, the Court observes that the Supreme Court decided Rosemond in March 2014, several months before Defendant's November 2014 sentencing. Despite this, Defendant did not invoke Rosemond in her direct appeal. Defendant has thus procedurally defaulted on the claim. See Wall v. United States, 619 F.3d 152, 154 (2d Cir. 2010) (per curiam); Sapia v. United States, 433 F.3d 212, 217 (2d Cir. 2005). Defendant fails to address the procedural default issue, and accordingly, she fails to show either cause or prejudice to excuse her default. See Whitman v. United States, 754 F. App'x 40, 43 (2d Cir. 2018) (summary order); Mateo-Rivera v. United States, No. 03-CR-0157, 2014 WL 3519181, at *5 (E.D.N.Y. July 15, 2014).

Second, the Court agrees with the Government's assertion that the Court properly instructed the jury as to a Pinkerton theory of liability. Under Pinkerton, "a coconspirator who does not directly commit a substantive offense may be liable for that offense if it was committed by another coconspirator in furtherance of the conspiracy and was a reasonably foreseeable consequence of the conspiratorial agreement." United States v. Pimentel, 83 F.3d 55, 58 (2d Cir. 1996) (citations omitted); see Rosario v. United States, 164 F.3d 729, 734 (2d Cir. 1998).

Here, the Court's instructions as to Count Two reveal a detailed discussion of the *Pinkerton* theory:

Now I will instruct you as to Counts 2 and 3, an additional instruction, which is called the Pinkerton charge.

There is another method by which you may evaluate the possible guilt of the defendant, Stephanie Lloyd, for the substantive charges in the indictment with respect to Counts 2 and 3, which charge the defendant with robbery of the post office and the use and brandishing of a firearm, even if you do not find that the Government has satisfied its burden of proving that the defendant is guilty as an aider or abettor.

If, in light of my instructions, the Government proves beyond a reasonable doubt that the defendant, Stephanie Lloyd, was a member of the conspiracy to rob the post office, charged in Count 1 of the indictment, and thus guilty on the conspiracy, Count 1, then you may also, but are not required to, find her guilty of the substantive crimes charged in Counts 2 and 3, provided you find that the Government proved beyond a reasonable doubt each of the following five elements:

First, that the crime charged in the substantive count you are considering was committed;

26

Second, that the person or persons you find actually committed the substantive crime was or were members of the conspiracy you found to have existed in Count 1;

Third, that the substantive crime you are considering was committed pursuant to a common plan and understanding you found to exist among the conspirators;

Fourth, that the defendant, Stephanie Lloyd, was a member of that conspiracy at the time the substantive crime was committed; and

Fifth, that the defendant, Stephanie Lloyd, could have reasonably foreseen that the substantive crime charged either in Counts 2 and 3 might be committed by her co-conspirators.

(Tr. at 1386-88.)   After giving these instructions, the Court repeated the fifth element and said that if the jury found that the Government proved all five elements beyond a reasonable doubt, it could find Defendant guilty of Counts Two or Three, "even if the defendant did not have actual knowledge of or participate in the acts constituting the crime."   (Tr. at 1388-89.)   The Court also cautioned the jury that if the Government failed to prove any of the five elements beyond a reasonable doubt, that the jury could not find Defendant guilty of Count Two or Three unless "the Government prove[d] beyond a reasonable doubt that the defendant aided and abetted the commission of the" post office robbery charge from Count Two.   (Tr. at 1389.)

The Court properly instructed the jury as to Pinkerton liability, thus rendering moot Defendant's claim that the Court

27

gave an improper instruction regarding Count Two.  See United States v. Masotto, 73 F.3d 1233, 1241 (2d Cir. 1996) ("When the jury is properly instructed on two alternative theories of liability, we must affirm when the evidence is sufficient under either of the theories.").  The Court, when ruling on Defendant's post-judgment motions, determined that the jury rationally held Defendant liable under Counts Two and Three under a Pinkerton theory.  Lloyd, 947 F. Supp. 2d at 266. The Second Circuit reached this same conclusion when ruling on Defendant's direct appeal regarding Count Three.  Lloyd, 631 F. App'x at 50.

The Court also notes that a conviction for robbery under a Pinkerton theory does not convert a robbery conviction into a conviction for conspiracy, "implicating the residual-clause concerns explored in *Davis*." United States v. Blanco, --- F. App'x ----, 2020 WL 3026248, at *1, n.2 (2d Cir. 2020) (quoting Barrett, 937 F. 3d at 126); Abouhalima v. United States, No. 20-CV-0834, 2020 WL 3318031, at *2 (S.D.N.Y. June 18, 2020).  Accordingly, the Court denies the § 2255 motion as to the Rosemond claim.

D.   Defendant's Motion for an Extension

The Court DENIES as moot Defendant's extension motion.  The Second Circuit has since ruled on Barrett thus eliminating any need for further extensions.

CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED in its entirety.  The Court also declines to issue a certificate of appealability because she has not made a substantial showing that she was denied a constitutional right.  <u>See</u> 28 U.S.C. § 2253(c)(2).  The Clerk of the Court is respectfully directed to mark this case CLOSED.


SO ORDERED.


                         /s/ JOANNA SEYBERT
                         Joanna Seybert, U.S.D.J.

Dated:  August   17  , 2020
        Central Islip, New York